13785

JENNINGS v. CLEARWATER MFG. CO.

(172 S. E., 870)

*Messrs. Hendersons & Salley* and *John E. Stansfield,* for appellants,

*Messrs. Williams & Busbee,* for respondent,

February 19, 1934.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

This action for damages, for an alleged malicious prosecution, tried in the Court of Common Pleas of Aiken County, resulted in a verdict and judgment for the plaintiff, and the defendants have appealed therefrom.

Since the main issue for our determination relates to the refusal of the trial Judge to direct a verdict in favor of the defendants, it is necessary to refer to the evidence, and, in our review thereof, we must take the same, and the inferences therefrom, favorable to the plaintiff.

The defendant company operated a bleachery at Clearwater and the other defendant, Vaughn, was its office manager and paymaster. Jennings, the plaintiff, an employee of the defendant company, worked on the night shift on one of the calendars. Another employee, Widener, worked on the same calendar with Jennings. George Savage, employed in the same department with Jennings, worked on a soaper machine, some fifty yards from where the plaintiff worked. Plaintiff resided at Belvedere, Widener at Langley, and Savage in Augusta, Ga. Plaintiff did not know the residences of either Widener or Savage, and had no connection with them other than in their employment.

On the night of December 2, 1931, while at his employment, the actions of Savage aroused the suspicion of Jennings that Savage might be stealing cloth, and Jennings reported that suspicion to Anderson, who appears to have had some supervisory position with the mill. Ferguson, night superintendent at the bleachery, saw Savage making trips from the mill to his automobile during the night, and, upon making an investigation, he found some stolen cloth in Savage's car. Ferguson sent for Beard, the mill constable, who watched the automobile and Savage until Savage came to his car at about 6:30 o'clock in the morning to leave for his home in Augusta. The constable arrested Savage, who denied any knowledge of the theft. Up to this time, no suspicion had attached to Jennings. After Savage had been put in jail, he sent a message to Vaughn, the office manager, and the latter with Beard, the constable, visited Savage. Savage made to Vaughn and Beard a statement to the effect that he did not steal the cloth, but that Jennings and Widener had stolen it and had given it to him; that he was to take it to Augusta and sell it, and, from the proceeds of two or three bolts, he was to get some money to pay on his rent and grocery account. Without any further investigation, except to talk over the situation with Beard and with Foley, the mill manager, Vaughn swore out a warrant for the arrest

of both Jennings and Widener, charging them with larceny. Jennings was arrested on December 3, 1931, and placed in jail, where he remained until December 6th, being released without bond at the request of Vaughn. Widener was also released from jail. After Jennings had been released, he went to the mill and talked with Vaughn, and told him that he had had nothing to do with the stealing of the cloth, that he had a family to support, and would like to be put back to work. Vaughn, after talking with the manager, Foley, told Jennings that nothing could be done about putting him back to work until after the preliminary hearing.

The preliminary examination was held before the magistrate on December 15th, and the testimony of the plaintiff was that Vaughn told him that the prosecution would withdraw the warrant against him and release him, if he would testify, and that in reply he told Vaughn that he would tell all that he knew about it. Magistrate Cullum, who held the examination, testified to his impression that the prosecution did not have enough evidence to go to trial against Jennings, and that he would probably be used as a witness for the State. The record in the magistrate's Court recited, among other things: "At the request of the prosecution and witnesses for the same, the charges as preferred against the defendants, Widener and Jennings, are dismissed."

A formal order of dismissal, admittedly signed by the magistrate a few days after the preliminary hearing, was stated by him to have been prepared from data he had furnished, and that it correctly represented what had occurred at the preliminary. This order sets out that: "Before going into the hearing, Mr. Salley (an attorney representing the prosecution), talked with Mr. Vaughn and then announced that they did not have the evidence to bind over the defendants, Widener and Jennings, and would therefore ask that the case be dismissed as to said two defendants, and would go into the hearing and proceed against the defendant, Savage."

On the trial of the case against Savage, in the Court of General Sessions, he entered a plea of guilty to the crime of receiving stolen goods, and was sentenced to serve a term in the State penitentiary.

Both in the lower Court and in this Court the defendants have urged that the plaintiff failed to meet the burden of proof imposed on him to prove the elements of (1) malice, (2) want of probable cause, and (3) the termination of the prosecution favorable to him, upon which his right of recovery rested.

In the consideration of actions seeking to recover damages for malicious prosecutions, it is to be remembered that, while individuals are to be protected against rash and baseless prosecutions, the public interests demand that Courts shall not frown upon honest efforts made in attempts to bring the guilty to justice, and the juries, who try actions for malicious prosecutions, should ever keep these principles in mind. In every case of this character there necessarily arises a duty, sometimes a most difficult one, which either a jury or the Court has to perform; namely, to make an application of the mentioned rule to the facts proven in the case.

Under the practice in this State, neither this Court nor a trial Court may rightly assume the province of a jury in passing on the proof, for our Constitution mandatorily prescribes that a trial Judge "shall not charge juries in respect to matters of fact, but shall declare the law." Section 26, Article 5.

Mr. Chief Justice Simpson said in the case of *Hogg v. Pinckney,* 16 S. C., 387: "The term 'malice,' as applied to torts, does not necessarily mean that which must proceed from a spiteful, malignant or revengeful disposition, but a conduct injurious to another, though proceeding from an ill-regulated mind not sufficiently cautious before it occasions an injury to another. 2 Bouv. Dic., 98."

And further, in the same case, he said: Malice "is implied where it shows a disregard of the consequences of the injurious act, without reference to any special injury which he may inflict on another," and, similarly, that malice was implied "in doing some illegal act for one's own gratification or purposes, without regard to the rights of others or the injury he may inflict on another."

In an action for damages for malicious prosecution, ■ malice may be inferred from want of probable cause; the reason for the rule, as pointed out in *Baker v. Hornick,* 57 S. C., 213, 35 S. E., 524, 529, being "where a person instituted a prosecution against another without probable cause, it is difficult to conceive of any other motive but a malicious one for bringing the prosecution."

To the same effect is the case of *Wheeler v. Nesbitt,* 65 U. S. (24 How.), 544, 551, 16 L. Ed., 765, where Mr. Justice Clifford said: "Want of probable cause is evidence of malice for the consideration of the jury."

It is true the implication of malice may be rebutted by circumstances (*Graham v. Bell,* 1 Nott & McCord Law (10 S. C. L.), 278, 9 Am. Dec., 687; *Campbell v. O'Bryan,* 9 Rich. Law (43 S. C. L.), 204; *Baker v. Hornick, supra; Smith v. Hughes,* 104 S. C., 149, 88 S. E., 369). And, in a few instances, based on unusual circumstances, it was held that the facts rebutting the inference of malice were such as to authorize the trial Judge to take the case away from the jury and directing a verdict or of ordering a nonsuit. *Graham v. Bell, supra; Campbell v. O'Bryan, supra;* and *Smith v. Hughes, supra.*

But, on the other hand, it is equally true that the ■ question whether the circumstances relied on to rebut the implication of malice are to be regarded as being conclusive is, ordinarily, an issue of fact which is to be submitted to the jury for their determination. In the case of *China v. Railway,* 107 S. C., 179, 92 S. E., 335, where testimony of circumstances was offered to rebut the

inference of malice, it was pointed out that such circumstances were not conclusive of the good faith of the prosecutor, but were merely circumstances for the consideration and interpretation of the jury.

Similarly, it is essentially a matter for the jury, under proper instructions of the Court, to pass on the sufficiency of the facts and circumstances relied on by the plaintiff to show lack of probable cause for the prosecution of the criminal action. Speaking to this very point, Mr. Justice McIver said: " * * * We think the true rule is, that after the jury have been instructed as to what constitutes probable cause, as matter of law, it is for them to say, from a review of all the facts and circumstances proved to have been present to the mind of the prosecutor at the time he commenced the prosecution, or to the plaintiff at the time he commenced his civil action, whether there was or was not probable cause for such proceeding. This rule is, as we have seen, not without the support of authority, is easy of application, and is in analogy with the rule in cases of negligence, which like probable cause presents a mixed question of law and fact." *Caldwell v. Bennett,* 22 S. C., 1.

The position urged by the defendant that the dismissal of the criminal charge against the plaintiff was not such a termination of the criminal action as to support an action for malicious prosecution is, in our opinion, clearly without merit. The case of *Harrelson v. Johnson,* 119 S. C., 59, 111 S. E., 882, is authority for the viewpoint that has been adopted by this Court "that the remedy accorded a citizen of damages for a malicious prosecution is intended to prevent and redress the malicious abuse of the process of the law, and that, when the particular proceeding instituted in malice had been legally terminated, the remedy of the injured party has matured; he is not required to await an acquittal, an adjudication of his innocence, which may never come, and may be purposely prevented. A contrary ruling would permit a maliciously dis-

posed prosecutor to hale the defendant before every magistrate in the country, or before the same magistrate a dozen times, and be immune from damages by allowing the case to be dismissed by the magistrate."

While conceding the proposition of the defendants that the decisions, generally, are to the effect that, if a prosecution is terminated by agreement between the parties, or at any instance, or upon the consent, of the accused, there is no such termination as will support an action for malicious prosecution, we do not think the testimony was such as to require a direction of a verdict for the defendants on that ground. There were such conflicts in the testimony as to the cause of the discontinuance of the prosecution, whether it came about because of an agreement between the parties or for lack of evidence to prove the crime charged against the plaintiff, as to require the trial Judge to submit that issue to the jury, and, moreover, the showing was strong enough to warrant the jury in reaching the conclusion contended for by the plaintiff. In an interesting annotation of the topic "Dismissal of criminal proceeding as result of compromise or settlement as precluding action for malicious prosecution," beginning at page 513 of 67 A. L. R., it is said (page 519), that the rule, outlined in the note, "is not applied in cases where the settlement was not voluntarily and understandingly made, but was made under coercion or duress; nor where the dismissal is not shown to have been the result of a valid compromise or settlement." It is also said (page 521) in the same annotation that, "Where substantial issues of fact have been presented, upon conflicting evidence, it may be proper, or even necessary, to submit such issues to a jury."

The presiding Judge submitted to the jury the issue as to the termination of the criminal prosecution, under the agreement claimed by the defendants, under instructions to which no exceptions have been taken, and, under the evi-

dence, the defendants were not entitled to ask for more than that.

A full and careful consideration of all the evidence, with proper application of the involved legal principles, impels us to hold that there was no error in the refusal to grant the directed verdict, asked by the defendants.

In passing upon the motion for a directed verdict, the presiding Judge said: "I am going to let this order guide me. You stated you had no evidence against this defendant, and that he would be discharged. I think it should go to the jury. But for this order, I don't know what I would do. It is a pretty close question without that order, but with that order, I think I will have to overrule it."

In three of their exceptions, the defendants charge that the statement made and the reasons given for the Court's ruling were erroneous, because the order of the magistrate was not controlling, being only an *ex parte* order, executed after the prosecution had ended; that there was no testimony that Mr. Salley, the attorney for the prosecution at the preliminary hearing, had stated that he had no evidence against the plaintiff, Jennings; and, even if Mr. Salley had made that statement, the reason given by him to the magistrate for dismissing the prosecution was not controlling.

The remarks of the Judge were not made in the presence of the jury; he having sent them out of the courtroom while the motion for a directed verdict was being considered. Accordingly, there was no prejudice to the defendants because of the remarks.

Evidently, in referring to the alleged statement of Mr. Salley, the Judge had in mind statements contained in the order of the magistrate, which had been introduced in evidence, and not to any other testimony in the case. The order being in evidence, and there seems to be no question about the correctness of its admissibility, it was entirely proper for the Judge to consider it in passing upon the motion of

the defendants. If the Judge was in error, as suggested by the defendants, in allowing himself to be guided entirely by the magistrate's order, and his ruling, nevertheless, was the proper one, his holding as to the directed verdict could not be disturbed, since it has long been the rule that a correct order of a trial Judge will be sustained by this Court, even if the reasons therefor are based on erroneous conclusions as to the legal principles involved.

In the charge to the jury, the Court instructed them as follows: "In estimating damages, you are at liberty to allow for injury to reputation as well as to person, and injury to credit that would compensate the wrong and indignity suffered by the plaintiff."

It is said by the defendants that there was no proof that the plaintiff had suffered any "injury to credit" as a result of his arrest, and the instructions complained of should not have been given. Very little is said in the argument as to the contention now made. We assume that the defendants intended to take the position that the word "credit," as used in the charge, had reference to the meaning of that word when ordinarily used in trade or business. We hardly think it was the intention of the Court to so use it, but that he intended it in its enlarged sense, where it signifies "a person's standing as a citizen in the community in which he lives; in other words, an expression which has been held to be synonymous with the words 'reputation' and 'confidence.'" 15 C. J., 1351. In the case of *Curlee v. Rose,* 27 Tex. Civ. App., 259, 65 S. W., 197, where the trial Judge, in an action for malicious prosecution, charged the jury that they might take into consideration damages to the plaintiff's "feelings, credit, and reputation," it was held that the word "credit," as so used, related to the plaintiff's standing in the community in which he lived, and not to his credit in a commercial sense.

It appears from the record here that the defendants submitted to the Court ten written requests to charge, and,

after the conclusion of the general charge, they submitted an oral request. The general charge, with the one possible exception now complained of, was, evidently, satisfactory to the defendants, for it was in line with the numerous written requests they had submitted, all of which were charged. Under all the circumstances, if the defendants thought, with or without good reason, there was a possibility of a misunderstanding of the word "credit" on the part of the jury as used by the Judge, we think the attention of the Court should have been directed to the one excerpt in the charge now complained of. We cannot, therefore, hold that there was any reversible error in the instructions to which exception has been made.

After the general charge, including requested instructions on the part of both the plaintiff and defendants, had been given, the defendants requested orally a charge that "on the trial of a criminal case where there are several on trial, that one can be convicted on the uncorroborated testimony of an accomplice if the jury believes his evidence." At first the trial Judge, in response, said, "I don't see where that has anything to do with it." But a little later he did say to the jury that the principle announced by counsel was "true." Furthermore, in his own language, he charged the request. Complaint is made that the remarks to the effect that the Judge did not see where the request had anything to do with it constituted highly prejudicial error to the defendants.

It is somewhat difficult to see how the charge that evidence given by an accomplice might be received and accepted in a criminal case, and that a conviction might be sustained thereon, would have been of any material aid in passing upon the dependability of an unsworn statement made privately to the prosecutor. It is quite sufficient, we think, to refer to the remarks of this Court in *Bushardt v. United Investment Company,* 121 S. C., 324, 113 S. E., 637, 35 A. L. R., 637, where it was indicated that the source of information,

concerning facts on which an arrest was based, should be reliable, or otherwise the information might be regarded as an insufficient basis for the arrest. See, also, annotation, page 1688, 5 A. L. R., where it is said that, generally, "the failure of a person who has received information tending to show the commission of a crime to make such further inquiry or investigation as an ordinarily prudent man would have made under the same circumstances, before instituting a prosecution, renders him liable for proceeding without probable cause."

The remark of the Judge as to which complaint is made was brought by the oral requests of both the plaintiff and the defendants, particularly the one made by the defendants, after considerable argument, *pro* and *con,* by counsel. Until the oral requests were presented, nothing had appeared on the part of any counsel to indicate that the principle announced in the oral request was applicable to the case. The oral request was in no way touched upon in any of the many written requests submitted. In these circumstances, it was quite natural for the Judge to state at first that he did not see wherein the oral request was applicable. A trial Judge should take care not to confuse the jury by charging them on legal principles which are inapplicable to the case on trial. On reflection, thinking the oral request of the defendants was applicable, the Judge instructed the jury accordingly, and it is not now apparent that his first remark was prejudicial to the defendants. Especially is that so, when, following the giving of that oral request, the jury were finally instructed that the "better test" was "whether or not the defendant acted with the information before him as a prudent man should have acted in this particular case. That would be the best method of determining whether there was probable cause." Those instructions were in harmony with the principles adverted to in the *Bushardt case, supra,* and in the annotation in A. L. R.

Finding no reversible error, as alleged in any of the ex-

ceptions, the judgment of this Court is that the judgment below be, and the same is hereby, affirmed.

MESSRS. JUSTICES STABLER, CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.