**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19–6374**

ROBERT SALLEY,

Plaintiff – Appellant,

v.

OFFICER PAUL MYERS,

Defendant – Appellee.

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Joseph F. Anderson, Jr., Senior District Judge.  (3:17–cv–03425–JFA)

Submitted:  May 8, 2020                    Decided:  August 10, 2020

Before GREGORY, Chief Judge, MOTZ, and AGEE, Circuit Judges.

Vacated and remanded* by published opinion.  Chief Judge Gregory wrote the opinion, in which Judge Motz joined.  Judge Agee wrote a dissenting opinion.

Christopher P. Kenney, RICHARD A. HARPOOTLIAN, PA, Columbia, South Carolina, for Appellant.  Daniel C. Plyler, Brandon M. Briggs, DAVIDSON, WREN & PLYLER, P.A., Columbia, South Carolina, for Appellee.

GREGORY, Chief Judge:

Robert Salley appeals a grant of summary judgment in favor of Officer Paul Myers on Salley's 42 U.S.C. § 1983 malicious prosecution claim. In 2014, Myers arrested Salley and charged him with congregating on the sidewalk in violation of the City Code of Columbia, South Carolina. More than three years later, Myers voluntarily dropped the charge. Salley then filed the instant suit against Myers, asserting that Myers arrested him without probable cause and ultimately dismissed the case because Salley was innocent. The district court, however, found that Salley could not maintain an action for malicious prosecution because the criminal proceedings against him did not terminate in his favor. The court therefore granted summary judgment for Myers.

Salley now argues that the district court misapplied the summary judgment standard. As explained below, we agree with Salley and vacate the summary judgment award for Myers.

I.

A.

On January 15, 2014, Salley, an honorably discharged Marine, ran a few errands before stopping outside of the Baptist Hospital in Columbia to call his sister, who had been in the emergency room the night before. Upon learning that his sister had already returned home, Salley walked to catch a bus on the corner of Sumter and Laurel Streets. Because that street corner was known for criminal activity, Myers and another officer were

2

patrolling the area when Salley approached. Salley and Myers provide starkly different versions of what happened next.

According to Salley, he was walking on Sumter Street near the bus stop when Myers and the other officer approached him and told him he was blocking the sidewalk. At first, Salley thought "it was just a joke" and tried to walk between the officers, but they "grabbed" him. J.A. 99, 110. Confused, Salley pointed out a man drinking a beer nearby, but Myers responded, "no, I want you." J.A. 112. Myers told Salley that he was "making a statement" twice during their encounter. *Id.* Myers handcuffed Salley, injuring Salley's shoulder in the process, and searched Salley's pocket. When Salley asked what he was doing, Myers responded that he was "looking for drugs," which he did not find. *Id.* Myers briefly returned to his vehicle, and Salley overheard him discussing possible charges for "blocking the sidewalk." *Id.* Salley, however, maintains that he "stopped no place but in front of the Baptist Hospital to call [his] sister. No other time."[1] J.A. 107.

By contrast, Myers testified that he observed Salley and another individual standing on the sidewalk for approximately seven to ten minutes, causing a few people to walk around them into the road. When Myers approached to ask them to move along, the other individual walked away, but Salley became "very hostile." J.A. 63. When Myers calmly explained the sidewalk ordinance, Salley responded by cursing loudly at Myers. Myers then handcuffed Salley and patted him down for weapons because he did not want Salley "to be able to hurt [him]." J.A. 65.

---

[1] Indeed, Salley testified that when he passed two men drinking beer, he said good morning to them, but he did not stop.

3

Myers eventually released Salley and issued a summons charging him with congregating on the sidewalk in violation of Columbia City Code § 22-72. Salley immediately walked to City Hall to file a complaint about his arrest with the city manager. Upon learning the manager was not in the office, Salley proceeded to the Columbia Police Department ("CPD") headquarters and filed a complaint with the internal affairs department. That same day, Salley went to the municipal court and requested a jury trial on the congregating charge. While his case remained pending, Salley contacted the CPD to follow up regarding his complaint and to check the status of his jury trial. He was informed that his case remained on the jury docket, but no information could be found on his internal affairs complaint. In fact, for reasons the CPD could not explain, Salley's complaint was never investigated.

Finally, more than three and a half years after his arrest, Salley was summoned to appear for a roster meeting on July 25, 2017. He again demanded a jury trial, which was set for August 7, 2017. At that point, however, Myers informed Salley that he nolle prossed the charge, meaning he declined to prosecute it.[2] According to Myers, Salley responded that the nolle prosse "was fine with him." J.A. 77. But when Salley was later asked if dismissal was his desired result, Salley replied, "No. I wanted to go into court." J.A. 53. Salley also testified that during their conversation, Myers indicated that he arrested Salley because he "thought [Salley] had drugs," which he did not. J.A. 52. Myers, however,

---

[2] A citation for congregating on the sidewalk is prosecuted only by the officer who issued the citation. In other words, Myers served as the prosecutor for the charge at issue.

explained in his deposition that he nolle prossed the charge to "cut [Salley] a break" because he "was an older man," and the case had been pending for several years. J.A. 77.

B.

On November 17, 2017, Salley filed a lawsuit against Myers in the Richland County Court of Common Pleas, raising § 1983 claims for false arrest and imprisonment and malicious prosecution. Myers removed the case to federal court and later moved for summary judgment. After Salley agreed to dismiss his claim for false arrest and imprisonment, a magistrate judge issued a report recommending that the district court grant Myers' summary judgment motion ("Report"). The Report concluded that Salley failed to produce evidence that criminal proceedings terminated in his favor, an essential element of his malicious prosecution claim. To satisfy this element, Salley needed to demonstrate that the charge against him was nolle prossed for a reason indicating his innocence. The Report determined that the only evidence of Myers' reasoning for the nolle prosse was Myers' testimony that he wanted to give Salley a break due to his age and the length of time since the arrest. Salley contended that Myers' testimony was false, but the Report found "no evidence in the record that would support such speculation." J.A. 147.

Salley filed three objections to the Report. First, he argued that the Report gave no weight to his testimony, which evidenced his innocence. The district court disagreed, finding that even if the court accepted all of Salley's testimony as true, he still had not shown that the charge was nolle prossed for a reason implying his innocence.

Second, Salley pointed to *McKenney v. Jack Eckerd Company*, a case in which a malicious prosecution plaintiff wrote a check to a drug store and the check was returned

5

due to insufficient funds. 402 S.E.2d 887, 887 (S.C. 1991). The return, however, was due to a bank error, and the bank quickly notified the drug store of its error. *Id.* Nevertheless, the drug store swore out a fraudulent check warrant against the plaintiff. *Id.* Salley asserted that there was evidence in his case, as in *McKenney*, to show he did not commit the crime and therefore the criminal proceedings terminated in his favor. The district court disagreed, finding *McKenney* distinguishable because that case involved actual evidence that the drug store knew about the bank error and still proceeded with the prosecution. In Salley's case, on the other hand, the record contained no actual evidence of his innocence.

Third, Salley argued that the Report credited Myers' word over Salley's, and on summary judgment, a court must leave questions of weight and credibility to the jury. The district court rejected this contention, determining instead that Salley failed to carry his burden of pointing to any evidence that contradicted Myers' testimony.

Additionally, Salley filed as supplemental authority this Court's opinion in *Williamson v. Stirling*, 912 F.3d 154 (4th Cir. 2018). Salley asserted that *Williamson* vacated a grant of summary judgment due to errors similar to those committed in the Report in his case—namely, applying an improper legal standard to credit Myers' testimony and ignoring Salley's. *See id.* at 178–79 (finding the district court erred by accepting the defendants' testimony without viewing the facts in the light most favorable to the plaintiff). But the district court decided that even viewing the facts in the light most favorable to Salley, Salley failed to show the criminal case terminated in his favor.

Accordingly, the district court rejected each of Salley's objections, adopted the Report, and granted summary judgment for Myers. Salley timely noticed this appeal.

6

II.

We review de novo a district court's decision to grant summary judgment, viewing the facts and drawing all reasonable inferences in the light most favorable to the nonmovant. *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 119 (4th Cir. 2011). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The essence of this inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). A court "cannot weigh the evidence or make credibility determinations" on summary judgment. *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016).

III.

A.

This case began when Myers arrested Salley and charged him with congregating on the sidewalk in violation of § 22-72 of the Columbia City Code. That section provides,

> All persons are forbidden from congregating and obstructing the sidewalks or streets in front of churches, hotels, business places and other buildings of public resort within the corporate limits of the city. The chief of police and any member of the police force shall have power to arrest and commit any person offending in any of the provisions of this section.

Columbia City Code § 22-72. After Myers nolle prossed the congregating charge, Salley brought a claim for malicious prosecution pursuant to § 1983. This claim is "founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort

7

of malicious prosecution." *Smith v. Munday*, 848 F.3d 248, 252 (4th Cir. 2017). To prove a § 1983 malicious prosecution, a plaintiff must show (1) the defendant seized the plaintiff pursuant to legal process not supported by probable cause,[3] and (2) the criminal proceedings terminated in the plaintiff's favor. *Id.* at 253.

The favorable termination element—at issue in this appeal—is satisfied when the "criminal case against the plaintiff has been disposed of in a way that indicates the plaintiff[']s innocence." *Snider v. Seung Lee*, 584 F.3d 193, 202 (4th Cir. 2009) (Stamp, J., concurring). South Carolina law—which informs our inquiry because § 1983 malicious prosecution claims sound in common law—tells us that a nolle prosse alone will not establish favorable termination. *See Nicholas v. Wal-Mart Stores, Inc.*, 33 F. App'x 61, 64–65 (4th Cir. 2002) (examining South Carolina law to assess when a nolle prosse establishes favorable termination); *see also Murphy v. Lynn*, 118 F.3d 938, 948–50 (2d Cir. 1997) (looking to New York law to define the contours of favorable termination). Instead, a malicious prosecution plaintiff must "establish[] that charges were nolle prossed for reasons which imply or are consistent with innocence." *McKenney*, 402 S.E.2d at 888 (emphasis removed); *see also Nicholas*, 33 F. App'x at 64–65 (applying *McKenney*).

Whether the termination of a criminal case is consistent with a defendant's innocence "depends on the nature and circumstances of the termination." *Murphy*, 118

---

[3] Myers now contends that Salley was not seized pursuant to legal process. Because we find no evidence in the record that Myers raised this argument below, he has waived it on appeal. *See, e.g.*, *Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993) ("As this court has repeatedly held, issues raised for the first time on appeal generally will not be considered.").

F.3d at 948 (internal quotation marks and alteration omitted). In other words, "[t]he circumstances surrounding the abandonment of the criminal proceedings must compel an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution." *Nicholas*, 33 F. App'x at 65; *accord Washington v. Summerville*, 127 F.3d 552, 557 (7th Cir. 1997). For instance, dismissal due to witness or victim unavailability does not indicate a defendant's innocence. *See, e.g.*, *Jordan v. Town of Waldoboro*, 943 F.3d 532, 546 (1st Cir. 2019) (dismissed because the victim and key witness had died). Similarly, the abandonment of charges due to a compromise or an act of mercy typically does not imply innocence. *Murphy*, 118 F.3d at 949; *see also* Restatement (Second) of Torts § 660 (listing these as circumstances that do not show favorable termination).

B.

Salley contends that in deciding whether Myers nolle prossed his case under circumstances implying his innocence, the district court did not properly apply the summary judgment standard. This standard required the court to draw factual inferences in Salley's favor and to avoid making credibility determinations. Instead, Salley argues, the court credited Myers' explanation for dismissing the charge without regard for Salley's contrary testimony or the circumstantial evidence that corroborated it.

Specifically, the Report found that the only evidence of Myers' reasoning for the nolle prosse was Myers' own testimony that he "cut [Salley] a break." J.A. 146. Although Salley urged that a jury could "infer based on the circumstances" that Myers' testimony was untruthful, the Report found "no evidence in the record that would support such speculation." J.A. 147. The district court echoed the Report, noting Salley pointed to no

9

evidence to support his "bald assertion" that Myers nolle prossed the case because "the congregating charge was predicated on a lie." J.A. 205. We disagree with these determinations.

"[A] court sitting in summary judgment must always accept the facts in the light most favorable to the nonmoving party." *Williamson*, 912 F.3d at 178–79. Here, the district court's "uncritical acceptance" of Myers' testimony failed to evaluate the circumstances surrounding the termination of the proceedings in the light most favorable to Salley, the nonmovant. *Id.* at 178. Viewed in the proper light, Salley has shown that a genuine issue of material fact exists as to whether Myers nolle prossed the congregating charge "in a way that indicates [Salley's] innocence." *Snider*, 584 F.3d at 202; *see also Murphy*, 118 F.3d at 950 (noting that a question about the nature of the circumstances leading to the termination of criminal proceedings "is one for the trier of fact").

In this case, when evaluating the "circumstances surrounding the abandonment of the criminal proceedings," we cannot ignore the context of Salley's arrest. *Nicholas*, 33 F. App'x at 65. Indeed, the initial charge here is especially relevant to its termination because Myers served as both the arresting officer and the prosecutor. In other words, Myers made the decision to charge Salley *and* the decision to drop the charge. Accordingly, the facts surrounding Salley's arrest serve as circumstantial evidence of the reason Myers ultimately nolle prossed Salley's case. We turn now to those facts.

Contrary to Myers' claim that Salley stood on the sidewalk for seven to ten minutes, Salley testified unequivocally that, after pausing in front of the hospital to call his sister, he did not stop while walking to catch his bus. Far from being a mere "bald assertion,"

10

Salley, in addition to his direct testimony about the encounter, has pointed to circumstantial evidence to support a finding that the charge was dismissed for reasons consistent with his innocence. J.A. 205. For instance, immediately after Myers released him, Salley attempted to file a complaint with the city manager, filed a complaint with the CPD internal affairs department, and demanded a jury trial—all critical circumstances ignored by the district court. These actions, which are not disputed, corroborate Salley's narrative by demonstrating his contemporaneous state of mind and his intent to assert his innocence from the moment of his arrest.

While his case remained pending, Salley followed up with the CPD about his complaint and continued to seek a jury trial. Although Myers indicated that Salley was "fine with" the nolle prosse, J.A. 77, Salley testified that he "wanted to go into court," which is consistent with Salley's prior insistence on a jury. J.A. 53. In sum, Salley's behavior following his arrest, viewed in the light most favorable to him, supports his testimony claiming he was innocent of congregating on the sidewalk. If a jury credited Salley's version of events, the jury could reasonably infer that it was Salley's innocence that drove Myers' decision to nolle prosse the charge.

Additionally, Salley testified that while Myers—in his role as an officer—searched Salley on the sidewalk, Myers explained that he was "looking for drugs," which he did not find. J.A. 112. Salley also testified that when Myers—in his role as a prosecutor— announced he had nolle prossed the charge, he indicated that he arrested Salley because he "thought [he] had drugs." J.A. 52. Moreover, Salley testified that Myers asserted he was "making a statement" during their encounter, and that he overheard Myers discussing

11

possible charges for "blocking the sidewalk." J.A. 112. If a jury credited Salley's testimony about Myers' desire to make a statement, his discussion of the type of charge to bring, and his disproven theory that Salley possessed drugs, the jury could infer "a lack of reasonable grounds to pursue the criminal prosecution." *Nicholas*, 33 F. App'x at 65.

A jury could also reasonably perceive Myers' justification for dropping the case as inconsistent with other circumstantial evidence. Myers testified that he nolle prossed the charge due to Salley's age and the length of time between the arrest and trial. Salley was 62 years old when Myers arrested him and 65 when Myers nolle prossed the charge. Myers waited over three years, until Salley's case was set for trial, to take Salley's age into consideration. Given Salley's age at the time of his arrest, a jury could infer that if Myers wanted to show mercy, he would not have charged Salley in the first place. Instead, the pending charge loomed over Salley for years, such that a jury could find that Myers would have nolle prossed the charge sooner if he was truly concerned about the lengthy delay.

We acknowledge that this case is not precisely like *McKenney*, in which there was indisputable evidence of the plaintiff's innocence due to the bank's acknowledgement of its error. 402 S.E.2d at 887. But neither is this case analogous to scores of others in which it was clear that a termination was *not* consistent with the plaintiff's innocence. *See, e.g.*, *Medows v. City of Cayce*, No. 3:07-cv-409, 2008 WL 2537131, at \*4 (D.S.C. June 24. 2008) (nolle prossed with leave to re-indict as the plaintiff remained a person of interest in an ongoing investigation). Myers, for instance, did not nolle prosse the case because Salley pled guilty to other charges. *Cf. Mullinax v. Waters*, No. 6:14-cv-1192, 2015 WL 3960908, at \*4 (D.S.C. June 29, 2015). Salley's charge was not dropped in favor of prosecution in

12

federal court. *Cf. Law v. S.C. Dep't of Corr.*, 629 S.E.2d 642, 649 (S.C. 2006). There is no indication that Myers could not secure a crucial witness for Salley's trial. *Cf. Lewis v. GNC Corp.*, 1:07-cv-865, 2009 WL 10678204, at *2 (D.S.C. May 14, 2009). Nor is it true, as the district court found, that Salley pointed to *no* evidence that Myers dropped the case for a reason implying Salley's innocence.

Instead, viewing the facts in the light most favorable to Salley, he has presented testimony that conflicts with Myers' explanation, as well as corroborating circumstantial evidence from which a jury could reasonably infer that the nolle prosse was consistent with his innocence. Considering this evidence and that a court cannot weigh credibility at this stage, summary judgment is not appropriate on the issue of whether proceedings terminated in Salley's favor.[4]

## IV.

Because there is a genuine dispute of material fact concerning the termination of criminal proceedings against Salley, we vacate the award of summary judgment to Myers and remand the case to the district court for further proceedings consistent with this opinion. We dispense with oral argument because the facts and legal contentions are

---

[4] The district court found Salley could not establish a malicious prosecution claim, so the court did not consider Myers' argument that he is entitled to qualified immunity. Accordingly, we will not address qualified immunity in this appeal. *See Lovelace v. Lee*, 472 F.3d 174, 203 (4th Cir. 2006) ("[W]e are a court of review, not of first view.").

13

adequately presented in the materials before the Court and argument would not aid the

decisional process.

<em>VACATED AND REMANDED</em>*

---

* This opinion is published without oral argument pursuant to this Court's Standing Order 20-01, http://www.ca4.uscourts.gov/docs/pdfs/amendedstandingorder20-01.pdf (amended Apr. 7, 2020).

AGEE, Circuit Judge, dissenting:

The favorable termination requirement for bringing a malicious prosecution claim under 42 U.S.C. § 1983 is satisfied "whenever a judgment in favor of the plaintiff would necessarily imply that his [criminal proceedings were] invalid." *McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019) (internal quotation marks and citation omitted); *accord Snider v. Seung Lee*, 584 F.3d 193, 202 (4th Cir. 2009) (Stamp, J., concurring) (finding the favorable termination element satisfied when the "criminal case against the plaintiff has been disposed of in a way that indicates the plaintiff[']s innocence"). "In defining the contours" of this requirement, we are "to look first to the common law of torts." *Manuel v. City of Joliet*, 137 S. Ct. 911, 920 (2017). In doing so, "[c]ommon-law principles are meant to guide rather than to control the definition of § 1983 claims, serving more as a source of inspired examples than of prefabricated components." *Id.* at 921 (internal quotation marks omitted). And in looking to these principles, courts must closely attend to the values and purposes of the constitutional right at issue." *Id.*

Against that backdrop, this appeal poses a simple question: can an unadorned *nolle prosse* dismissal from a South Carolina state court satisfy the favorable termination requirement for bringing a § 1983 malicious prosecution claim? According to the Supreme Court's guidance, that answer should be informed by a similarly straightforward inquiry: what effect do South Carolina state courts give *nolle prosse* dismissals?

In attempting to answer the first question, however, the majority ignores the second, eschewing relevant guidance from South Carolina courts on the issue. Instead of looking to those "source[s] of inspired examples," *Hartman v. Moore*, 547 U.S. 250, 258 (2006),

15

the majority turns to various decisions from our sister circuits (none of which look to the effect of a *nolle prosse* dismissal under South Carolina law) to support its conclusion that such a dismissal may form the basis of a malicious prosecution claim so long as the plaintiff maintains his innocence of the underlying charge. In doing so, the majority disregards the standard for reviewing a district court's grant of summary judgment, choosing to rely on speculative circumstantial evidence and purportedly disputed facts that have no bearing on the reason for the *nolle prosse* dismissal.

At bottom, the majority's conclusion finds no support in South Carolina courts' treatment of *nolle prosse* dismissals. Robert Salley has failed to proffer a scintilla of evidence suggesting that Officer Paul Myers *nolle prossed* the charge against him for reasons based on "the merits of the dispute," *Gecy v. Somerset Point at Lady's Island Homeowners Ass'n, Inc.*, 828 S.E.2d 73, 79–80 (S.C. Ct. App. 2019), or "which imply or are consistent with innocence," *McKenney v. Jack Eckerd Co.*, 402 S.E.2d 887, 888 (S.C. 1991). Accordingly, I dissent and would affirm the district court's grant of summary judgment in favor of Officer Myers.

I.

"A malicious prosecution claim brought under section 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." *Hupp v. Cook*, 931 F.3d 307, 323–24 (4th Cir. 2019) (internal quotation marks and citations omitted). To prevail, "a plaintiff must show that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by

16

probable cause, and (3) criminal proceedings terminated in the plaintiff's favor."[1] *Id.* (internal quotation marks and alteration omitted). Only the third element is at issue in this appeal.[2]

As the majority notes, many of the facts pertaining to Salley's underlying arrest— including whether Officer Myers had probable cause to effectuate it—are disputed. But the facts related to Officer Myers' decision to *nolle prosse* the charge against Salley are not. And it is these undisputed facts, alone, that are relevant to the question presented in this appeal.

---

[1] Though we should look to federal law to determine whether the first two elements have been satisfied—i.e. whether the plaintiff was seized in violation of the Fourth Amendment—the third element is necessarily informed by the effect state courts give the mechanism used to terminate a plaintiff's underlying state criminal proceedings. Because South Carolina courts have a favorable termination requirement for bringing malicious prosecution claims, *see Carter v. Bryant*, 838 S.E.2d 523, 532 (S.C. Ct. App. 2020), we should turn to decisions from those courts as "inspired examples," *Hartman*, 547 U.S. at 258, when considering whether Salley has satisfied this third element for bringing his § 1983 claim.

[2] I agree with the majority that Officer Myers has waived his argument for purposes of this appeal challenging the second element—that the summons issued to Salley was not "legal process." *See, e.g.*, *Barbe v. McBride*, 521 F.3d 443, 454 n.17 (4th Cir. 2008) (declining to address an argument made for the first time on appeal). That said, I would note that we have previously observed in the context of a § 1983 claim for malicious prosecution that "[w]hether a summons constitutes a seizure for Fourth Amendment purposes is not clear." *Burrell v. Virginia*, 395 F.3d 508, 514 n.6 (4th Cir. 2008). We have also held that "[a] summons requiring no more than a court appearance, without additional restrictions, does not constitute a Fourth Amendment seizure." *Ryu v. Whitten*, 684 F. App'x 308, 311 (4th Cir. 2017) (per curiam); *accord Glass v. Anne Arundel County*, 716 F. App'x 179, 180 n.1 (4th Cir. 2018) (per curiam) ("[A] summons alone is insufficient to support a Fourth Amendment seizure claim."). The same may be true with regard to the summons issued here, but the merits of that argument are not properly before us under the current posture of the appeal.

On January 15, 2014, Officer Myers issued Salley a uniform traffic ticket for congregating on a sidewalk, in violation of Columbia City Code § 22-72. That same day, Salley went to the Municipal Court and filed a jury trial request form. When asked during his deposition in this case why he wanted a jury trial, Salley responded that "[Officer Myers] violated me" and Salley "wouldn't trust a bench trial" because "the police [are] in charge and most magistrates take whatever the police say." J.A. 49. Salley also filed a complaint against Officer Myers with the Columbia Police Internal Affairs department.[3] Nothing in the record indicates that Officer Myers was ever made aware of this complaint or Salley's motivations for requesting a jury trial. *See* J.A. 129–30 ("Q. Okay. But as we sit here today, the police department has made no finding whatsoever, has not looked into [the complaint], there's no conclusion to offer? A. No, we haven't.").

Three-and-a-half years later, Salley was summoned to appear at a roster meeting in July 2017. The state Municipal Court then set the case for trial on August 7, 2017. When Salley arrived at the courthouse that day, he spoke with Officer Myers. Salley testified that he began the conversation by asking Officer Myers: "[W]hy did you do this?" J.A. 51–52.

---

[3] The majority posits that "[t]hese actions . . . corroborate Salley's narrative by demonstrating his contemporaneous state of mind and his intent to assert his innocence from the moment of his arrest." Majority Op. at 11. What the majority fails to note, however, is similar record evidence demonstrating Officer Myers' "contemporaneous state of mind." According to Officer Myers' Incident Report, submitted on January 21, 2014, Officer Myers noted that he "explained the statute to Salley, that [Salley] was blocking the sidewalk for people to pass. Salley became extremely hostile. [Officer Myers] advised Salley that he was under arrest and was to receive a citation ticket. Salley attempted to leave the scene. [Officer Myers] handcuffed Salley." J.A. 81. But *neither* factual account is relevant to the question on appeal: whether a *nolle prosse* dismissal under South Carolina law is a favorable termination for purposes of bringing a § 1983 malicious prosecution claim.

18

According to Salley, Officer Myers responded that he thought Salley "had drugs." J.A. 52. "And then [Officer Myers] dropped [the charge]." J.A. 52. That was it. And apart from a brief conversation where Salley disclosed that he was diabetic, there is no evidence of any further discussion between the two men. Though Salley later claimed in this litigation that the *nolle prosse* dismissal was not "the result [he] wanted" because he had hoped to have a jury trial, there is no indication in the record that he expressed any reluctance to anyone before accepting the offer to dismiss the charges. J.A. 53.

Officer Myers offered a similar account. When asked about his decision to dismiss the charge,[4] Officer Myers testified:

> This case was in 2014 and it comes up in jury trial. He must have asked for a jury trial. And it came up in 2017. This is typical in the City. I mean, [in 2018] I have cases from 2009, 2010, [where] I haven't done a jury trial [yet]. It's just like who knows what happened. Right?
>
> So from 2014 to the court date in 2000 – what it is, '17; right? 7/25/17 was a roster meeting for the Court. I call out anyone that I'm there for and I say, are you present and we talk about it. And with Mr. Salley, I know that he was an older guy, you know, and he might be mad that day and I wasn't looking to, you know. Yes, I had a fully justifiable reason to give him that ticket.

---

[4] As the majority notes, the arresting officer often serves as the prosecutor for citations similar to the one issued here. Majority Op. at 4 n.2. Thus, the decision to dismiss or prosecute a charged offense rests within the officer's discretion. This appears to be common practice in South Carolina courts for a wide array of misdemeanor charges. *See, e.g.*, *In re Richland Cty. Magistrate's Ct.*, 699 S.E.2d 161, 164 (S.C. 2010) (recognizing that the Supreme Court of South Carolina has "sanctioned the practices of allowing the arresting South Carolina Highway Patrol officer to prosecute traffic-related offenses and licensed security officers to prosecute misdemeanor cases in magistrate's court" because they are "acting in the capacity of public officials and are sworn to uphold the law"); *State v. Messervy*, 187 S.E.2d 524, 524–25 (S.C. 1972) (holding that it was proper for the arresting patrolman to serve as both the sole prosecutor and witness in a criminal jury trial).

But due to the length of time and we hadn't dealt with it since 2014, the day I went to court and he asked for jury [trial] until this day in 2017 that it came up. I said, that's a long time, you know. He was an older man. I cut him a break. You know, I talked to him prior and I said, you know, I'll [*nolle prosse* the charge]. Don't worry about it. And he was fine, you know.

J.A. 76–77. Officer Myers further testified that he had no specific recollection of anything Salley said during their conversation other than "[Salley] was, you know, short answering. Just said, okay, that [the *nolle prosse* dismissal] was fine with him." J.A. 77. Salley offered no evidence disputing Myers' version of the events.

After their conversation, they "went upstairs [in the courthouse, and Officer Myers] said he was going to drop it." J.A. 52. The Municipal Court judge then dismissed the case. Salley received a confirmation "Letter of Disposition" ("LOD"), indicating—without any stated reason—that the charge was *nolle prossed*. J.A. 20. Nothing in the record suggests that Salley objected to this dismissal either when he appeared before the court or after he received the LOD.

## II.

We review *de novo* a district court's decision to grant summary judgment, "applying the same legal standards as the district court and viewing all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Grutzmacher v. Howard Cty.*, 851 F.3d 332, 341 (4th Cir. 2017) (internal quotation marks omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to

20

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). To withstand a motion for summary judgment, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).

## III.

## A.

Under a proper understanding of the favorable termination requirement for bringing a § 1983 malicious prosecution claim, the first step in our analysis should be to consider what effect, if any, South Carolina courts give to *nolle prosse* dismissals so as to determine whether such a dismissal "necessarily impl[ies] that [Salley's criminal proceeding was] invalid." *McDonough*, 139 S. Ct. at 2157. According to the Supreme Court of South Carolina, "[a] *nolle prosequi* is an entry by the prosecuting officer that he has decided not to prosecute a case." *Mackey v. State*, 595 S.E.2d 241, 242 (S.C. 2004); *cf. State v. Ridge*, 236 S.E.2d 401, 402 (S.C. 1977) ("In this State, the entering of a *nolle prosequi* at any time before the jury is impaneled and sworn is within the discretion of the solicitor[.]"). Thus, "when a solicitor enters a *nolle prosequi*, charges are extinguished." *Mackey*, 595 S.E.2d at 242. Nevertheless, "the solicitor . . . retain[s] the right to re-indict [the defendant] because jeopardy does not attach until a jury has been empaneled and sworn." *Id.* "In fact, [the Supreme Court of South Carolina] has held that 'if the *nolle prosequi* is entered prior to

21

the jury being empaneled and sworn, there is no bar to further prosecution for the same offense because *the innocence or the guilt of the defendant would not have been adjudicated.*'" *Id.* (quoting *State v. Patrick*, 457 S.E.2d 632, 636 (S.C. 1995)) (emphasis added).

With this understanding of what it means to *nolle prosse* a charge under South Carolina law, the second step in the analysis should be to consider whether that state's courts consider such a dismissal to be a favorable termination for purposes of establishing a malicious prosecution claim. As the parties recognize—though the majority largely ignores—the leading case on this issue is the Supreme Court of South Carolina's decision in *McKenney*, 402 S.E.2d 887.[5] The dispute at the heart of that litigation began when the plaintiff issued the defendant a check. Due to a bank error, the check was returned to the defendant marked "insufficient funds." But shortly thereafter, the bank notified the defendant of its error. Nevertheless, around one month later, the defendant swore out a fraudulent check warrant against the plaintiff, which was later *nolle prossed*. Overruling its prior decisions drawing a bright-line rule that *nolle prosse* dismissals could never qualify as favorable terminations for purposes of bringing a malicious prosecution claim, the Supreme Court of South Carolina carved out a limited exception allowing such a dismissal to satisfy the necessary requirement in cases where the "accused establishes that charges were *nolle prossed* for reasons which imply or are consistent with innocence[.]"

---

[5] To be sure, the majority cites *McKenney* and one other South Carolina state court decision, *Law v. S.C. Dep't of Corr.*, 629 S.E.2d 642 (S.C. 2006), but fails to give those cases their appropriate role. Majority Op. at 12–13.

*Id.* at 888. Applying that standard, the court determined that the plaintiff had carried his burden by pointing to objective evidence that he was innocent and that the defendant was aware of his innocence before swearing out the warrant.

In defining the scope of this exception, the South Carolina Court of Appeals has further explained that establishing that a charge was dropped for reasons implying or consistent with innocence requires the plaintiff to show that the charges were *nolle prossed* for reasons based on "the merits of the dispute." *Gecy*, 828 S.E.2d at 80; *see also* 54 C.J.S. *Malicious Prosecution* § 60 (2018) ("For the termination of the underlying action to be deemed favorable to the defendant in the underlying action, as an element of malicious prosecution, the termination must reflect on the merits of the underlying action."); 52 Am. Jur. 2d *Malicious Prosecution* § 29 (2018) ("[A]ll that is required is that the termination reflect the merits of the [underlying] action."). Thus, it is unsurprising that South Carolina district courts "have held that a simple, unexplained *nolle prosequi*, dismissal, or disposal of pending state charges that results in the dismissal of the charges for reasons other than the defendant's innocence does not satisfy the favorable termination requirement." *Hewitt v. D.P. Garrison*, No. 6:12-3403-TMC, 2013 WL 6654237, at *2 (D.S.C. Dec. 17, 2013).[6] This understanding comports with South Carolina's longtime practice of holding that "if a prosecution is terminated by agreement between the parties, or at any instance, or upon the consent, of the accused, there is no such termination as will support an action for malicious

---

[6] The majority claims that Salley's case is not "analogous to scores of others in which it was clear that a termination was *not* consistent with the plaintiff's innocence," Majority Op. at 12, but omits any reference to *Hewitt*.

23

prosecution[.]" *Jennings v. Clearwater Mfg. Co.*, 172 S.E. 870,  873 (S.C. 1934).

We considered *McKenney*'s impact on South Carolina malicious prosecution claims in *Nicholas v. Wal-Mart Stores, Inc.*, 33 F. App'x 61 (4th Cir. 2002) (per curiam). There, a former Wal-Mart cashier was arrested and charged with breach of trust for allowing a customer to leave the store without paying for merchandise. Wal-Mart claimed the alleged criminal acts had been captured on videotape. However, no witnesses saw the cashier at the time of the theft. Based solely on the videotape, Wal-Mart called the police, lodged a complaint against the cashier, and swore out an affidavit in support of her arrest. The criminal case was called on the docket several times, but never reached trial and was eventually *nolle prossed*. The reasons for the dismissal were unclear, but the cashier testified that the case never went to trial because no representative from Wal-Mart showed up to prosecute it.

Under those facts, we concluded that the cashier's "testimony [was] insufficient to allow a juror to reasonably infer that the case had been dismissed for reasons consistent with [the cashier's] innocence." *Id.* at 65. In reaching that decision, we began our analysis by "predict[ing] that the South Carolina Supreme Court would agree with other courts that have also relied on the [Restatement (Second) of Tort's] formulation of the rule insofar as they have imposed upon malicious prosecution plaintiffs the affirmative burden of proving that the *nolle prosequi* was entered under circumstances which imply or are consistent with innocence of the accused." *Id.* at 64–65. That is, "[t]he circumstances surrounding the abandonment of the criminal proceedings must *compel* an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution." *Id.* at 65 (emphasis added).

24

"Otherwise, every time criminal charges are dismissed by *nolle prosequi*, a civil malicious prosecution could result." *Id.* Based on the record in that case, we found that the cashier had simply failed to carry her burden.

The same is true here.

## B.

Much like the plaintiff in *Nicholas*, Salley has pointed to no record evidence establishing that Officer Myers *nolle prossed* the charge "for reasons which imply or are consistent with [Salley's] innocence." *McKenney*, 402 S.E.2d at 888. Nor is there any indication that the charges were *nolle prossed* for reasons based on "the merits of the dispute." *Gecy*, 828 S.E.2d at 79–80. Salley's "innocence or . . . guilt" was not "adjudicated," and Officer Myers "retain[ed] the right to re-indict [Salley] because jeopardy" had not attached. *Mackey*, 595 S.E.2d at 242.

Thus, as South Carolina courts interpret *nolle prosse* dismissals, it was not a favorable termination for purposes of establishing a § 1983 malicious prosecution claim. Even accepting Salley's version of the events as true—which we must at this stage of the litigation—he has offered nothing to controvert Officer Myers' stated reasons for dismissing the charge against him. Moreover, unlike the plaintiff in *McKenney*, Salley has presented no objective evidence that would allow a jury to infer his innocence. And unlike the Supreme Court of South Carolina's recent decision in *Carter v. Bryant*, 838 S.E.2d 523, 534 (S.C. 2020), there is no indication in the record that Officer Myers *nolle prossed* the charge based on a belief that a jury would acquit Salley. Any inference to the contrary

would be based on nothing more than pure conjecture. And that is not enough to allow this case to proceed to a jury.

C.

The majority concludes otherwise, finding that "the district court's 'uncritical acceptance' of [Officer] Myers' testimony failed to evaluate the circumstances surrounding the termination of the proceedings in the light most favorable to Salley[.]" Majority Op. at 10. To support its holding, the majority cites four pieces of purportedly disputed or circumstantial evidence. In concluding that these items—which have no nexus to the reason for the *nolle prosse* dismissal—are sufficient to allow Salley's claim to survive summary judgment, the majority fails to observe our standard for reviewing such determinations.

First, the majority points to Salley's "unequivocal[]" testimony about the encounter—which is relevant for determining only whether Officer Myers had probable cause to issue the summons, not whether he *nolle prossed* the charge for reasons consistent with Salley's innocence or based on the merits. *Id.* It then cites the purportedly "critical" circumstantial evidence that Salley filed a complaint with the Columbia Police Internal Affairs department and demanded a jury trial. *Id.* at 11. As the record indicates, however, there is nothing to suggest that Officer Myers was ever made aware of the complaint. Thus, there is no reason to infer that it played a role in Officer Myers' decision to *nolle prosse* the charge. And if merely demanding a jury trial is all that is necessary to render a *nolle prossed* charge "consistent with [a defendant's] innocence," *id.*, then the favorable termination requirement is nothing but a rubber stamp when considering § 1983 malicious prosecution claims—a result with no support in South Carolina or federal law.

26

Second, the majority points to Salley's *post hoc* testimony that he was disappointed with the *nolle prosse* dismissal because he "wanted to go into court," J.A. 53, as evidence that he was innocent of the underlying charge. However, nothing in the record suggests that Salley expressed this disappointment to Officer Myers before accepting the offer to dismiss the charge, or that Salley sought to dissuade him from doing so. Nor did Salley object to the *nolle prosse* dismissal in court or after he received the LOD. As a result, the majority implausibly concludes that an otherwise unarticulated desire to proceed to trial allows for a "reasonabl[e] infer[ence] that it was Salley's innocence that drove Myers' decision to *nolle prosse* the charge." Majority Op. at 11. But one person's subjective and unexpressed feeling cannot be the basis for determining another person's motive.

Third, the majority cites Salley's testimony that Officer Myers arrested him because he "thought [Salley] had drugs," J.A. 52, and wanted to "mak[e] a statement," J.A. 112. Based on this evidence, the majority concludes that if a jury credited Salley's testimony, it could infer "a lack of reasonable grounds to pursue the criminal prosecution." Majority Op. at 12 (quoting *Nicholas*, 33 F. App'x at 65). But much like Salley's "unequivocal[]" testimony about the encounter, his testimony about Officer Myers' purported statements is only relevant for determining whether there was probable cause to issue the summons. It has no bearing on the separate and relevant inquiry concerning Officer Myers' motivations to *nolle prosse* the charge. As a result, any dispute on this point—which there clearly is given Officer Myers' contrary version of the events—is not material to the question on appeal.

Fourth, the majority points to circumstantial evidence it believes is inconsistent with Officer Myers' stated justifications for dropping the charge. According to the majority, "[g]iven Salley's age at the time of his arrest, a jury could infer that if Myers wanted to show mercy, he would not have charged Salley in the first place." *Id.* "Instead, the pending charge loomed over Salley for years, such that a jury could find that Myers would have *nolle prossed* the charge sooner if he was truly concerned about the lengthy delay." *Id.*

Unsurprisingly, Salley did not advance any argument to this effect given how detached it is from the record. To adopt the majority's reasoning, one would have to assume that any later act of mercy is rendered irrelevant so long as one of the bases for extending it existed at the time of the original offense. Similarly, one would have to assume that Officer Myers not only consistently thought about the uniform traffic citation he issued to Salley for three-and-a-half years, but also that he refused to dismiss the charge each time he thought about it because he wanted to prosecute Salley for a crime he did not commit. In effect, the majority's reasoning on this point requires building multiple unfounded "inference[s] upon another." *Dash*, 731 F.3d at 311. As we have held time and again, that is simply not enough to survive a motion for summary judgment.

IV.

Because Salley failed to establish that the underlying criminal proceedings terminated in his favor, I would affirm the district court's award of summary judgment for Officer Myers.[7]

---

[7] I agree with the majority that we should leave Officer Myers' argument that he is entitled to qualified immunity for the district court to determine in the first instance. *See, e.g.*, *Goldfarb v. Mayor of Baltimore*, 791 F.3d 500, 515 (4th Cir. 2015) ("The district court is in a better position to consider the parties' arguments in the first instance, which can be presented at length rather than being discussed in appellate briefs centered on the issues the district court did decide.")